CHAMBERS OF
**STEPHANIE A. GALLAGHER**
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 19, 2013

LETTER TO COUNSEL

RE:     *Lawrence J. Veal v. Commissioner, Social Security Administration;*
        Civil No. SAG-12-2619

Dear Counsel:

On September 4, 2012, claimant Lawrence Veal petitioned this Court to review the Social Security Administration's final decision to deny his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 15, 19). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

Mr. Veal filed his claim for benefits on March 5, 2007, alleging a disability onset date of September 1, 2006.[1] (Tr. 227-30). His claims were denied initially on April 12, 2007, and on reconsideration on August 03, 2007. (Tr. 185-89, 191-94). A hearing was held on September 12, 2008 before an Administrative Law Judge ("ALJ"). (Tr. 135-75). Following the hearing, on November 4, 2008, the ALJ determined that Mr. Veal was not disabled. (Tr. 117-34). The Appeals Council ("AC") granted Mr. Veal's request for review, and remanded the case to the ALJ with instructions to conduct further fact finding into Mr. Veal's mental impairments. (Tr. 103-12). In doing so, the AC reopened a later favorable decision made by the State Agency that found Mr. Veal disabled as of November 1, 2008, and consolidated the two claims. (Tr. 105). The ALJ held a second hearing on October 27, 2010. (Tr. 36-68). On December 16, 2010 the ALJ again found that Mr. Veal was not disabled within the meaning of the act. (Tr. 18-31). Mr. Veal requested a second time that the AC review the ALJ's decision. (Tr. 12-14). The AC granted review, and issued a partially favorable decision on August 16, 2012, finding Mr. Veal disabled as of August 31, 2009, when he turned fifty five, but adopting the ALJ's finding of not disabled prior to that date. (Tr. 1-9). The AC's August, 2012 decision constitutes the final, reviewable decision of the agency.

---

[1] Mr. Veal's SSI application is not included in the record, but it appears that he filed it on January 5, 2007. (Tr. 120).

The AC found that Mr. Veal had the following severe impairments: left knee pain status-post arthroscopic surgery, decreased hearing, depressive disorder, anxiety disorder, and bipolar disorder. (Tr. 7). However, the AC adopted the finding of the ALJ that Mr. Veal retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CRF 404.1567(b), except he can never climb ladders, ropes, or scaffolds, and can only occasionally perform all other postural activities. He is further limited to simple, unskilled work that is not performed at a production-rate pace; does not require travel; is isolated and requires only occasional contact with supervisors, co-workers, and the general public; and does not involve exposure to background noise. Finally, he is limited to low-stress work, defined as work requiring only occasional changes in setting, occasional decision-making, and occasional use of judgment.

(Tr. 6). Based on that RFC, after Mr. Veal turned age fifty five on August 31, 2009, Medical-Vocational Rule 202.02 ("the Grids") directed a finding that he was disabled. (Tr. 6).

Mr. Veal presents two primary arguments on appeal: (1) that the ALJ failed to follow the instructions in the appeals order, and (2) that the ALJ failed to properly evaluate and assign proper weight to the medical evidence. Both arguments lack merit.

Mr. Veal's first argument is unpersuasive. A failure by the ALJ to follow the precise dictates of the AC does not automatically warrant remand. *See Yonek v. Astrue*, No. TMD 09-2905, 2011 WL 1231154 (D. Md. Mar. 28, 2011). Further, "regardless of whether the ALJ fully complied with the Appeals Council's remand order, judicial review is limited to the question [of] whether the ALJ's decision is supported by substantial evidence and reflects application of the correct legal standards." *Fajardo v. Astrue*, CV 08-01615 AJW, 2010 WL 273168, at *3 (C.D. Cal. Jan. 14, 2010). Here, the ALJ found that Mr. Veal's June, 2010 psychological consultative examination fulfilled the AC's directive to "[o]btain evidence from a medical expert to clarify the nature and severity of the claimant's mental impairments." (Tr. 40-41). The AC chose not to remand the case a second time, indicating that the AC considered the ALJ's decision to be sufficiently in compliance with the remand order. Accordingly, Mr. Veal's first argument fails, and remand is therefore unwarranted on that basis.

Mr. Veal's second primary argument is that the ALJ failed to properly evaluate the medical opinions in the record.[2] First, he argues that ALJ assigned too little weight to the opinion of treating psychiatrist Dr. Wessells. A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record. *See Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996); *see also* 20 C.F.R. § 404.1527(d)(2). Dr. Wessells opined that Mr. Veal had poor to no ability to deal with work stress, maintain

---

[2] Because the AC adopted the findings and rationale of the ALJ's December, 2010 opinion, as it pertained to the period before August 31, 2009, it is appropriate to review that opinion.

attention and concentration, and understand and carry out complex and detailed job instructions. (Tr. 478-79). The ALJ gave little weight to that part of Dr. Wessells's opinion because she found "it is unsupported by the evidence of record[.]" (Tr. 27). However, she gave "some weight" to Dr. Wessells's opinion that Mr. Veal could follow work rules and carry out simple job instructions, but that he was limited in his social capabilities. *Id.* In her detailed review of the medical evidence, the ALJ noted that Dr. Wessells's treatment notes consistently noted that Mr. Veal experienced improvement in sleep and had a stable mood after his inpatient admission for depression, anxiety, and bipolar disorder. (Tr. 25, 484-84, 496, 498-99, 507, 520-21). Dr. Wessells's treatment notes, as the ALJ observed, are inconsistent with his opinion that Mr. Veal had severe limitations in his ability to concentrate, and his ability to handle work stresses and complex job instructions. Accordingly, I find the ALJ's assignment of little to some weight to Dr. Wessells's opinion was appropriate and based on substantial evidence.

Further, Mr. Veal asserts that the ALJ erroneously discounted the opinions of the state psychological consultants, Drs. Ewell and Ganter. In a Psychiatric Review Technique and Mental Residual Function Capacity Assessment, Dr. Ewell concluded that Mr. Veal had "marked restrictions in concentration, persistence, and pace." (Tr. 547). The ALJ gave Dr. Ewell's assessment little weight, because he "did not consider the medical record as a whole." (Tr. 28). The ALJ found that Mr. Veal's response to medication and his reported activities contradicted Dr. Ewell's finding of more severe limitations. *Id.* Dr. Ganter prepared a psychological consultative evaluation, and opined that Mr. Veal's "understanding is generally adequate, but there is severe impairment of memory, sustained concentration and persistence." (Tr. 543-44). Further, Dr. Ganter noted that Mr. Veal was "quite distractible and [found] it difficult to focus on the kind of material presented to him" on the Wechsler Adult Intelligence Scale III test. (Tr. 541). The ALJ gave Dr. Ganter's opinion "little weight" and highlighted the inconsistencies between his conclusions and the observations he recorded during the examination, as well as the record as a whole. (Tr. 28-29). The ALJ noted that such a severe limitation is not at all consistent with the GAF score of 60 that Dr. Ganter assessed, which indicated that Mr. Veal had only moderate difficulties in social and occupational functioning. Further, the ALJ found Dr. Ganter's findings inconsistent with Mr. Veal's statements reporting only that he "forgets where he puts things and might forget an appointment."[3] (Tr. 564). Mr. Veal does not challenge the ALJ's assignment of weight to state psychological consultant Dr. Burlingame. However, Dr. Burlingame also concluded that Mr. Veal's concentration and task persistence were poor. (Tr. 566). Yet, he noted elsewhere in his opinion that Mr. Veal's "attention and concentration appeared to be functional and adequate" and that his mental status examination was within normal limits. (Tr. 564). The ALJ accordingly assigned Dr. Burlingame "little weight." (Tr. 29). I find that the ALJ's assignment of decreased weight to the opinions of the state consultants and consultative examiners was appropriate given the internal inconsistencies she noted, as well

---

[3] Dr. Ganter also stated that Mr. Veal has "very serious problems in terms of social interaction," suggesting a "very serious impairment of ability to adapt to new situations." (Tr. 544). However, that too is inconsistent with his moderate GAF score finding. Moreover, the ALJ noted that Mr. Veal reported that he socialized with his family, in particular his grandchildren, and lived with his wife. I find that the ALJ had a sufficient basis for discounting this portion of Dr. Ganter's opinion as well.

as Mr. Veal's self-reported activities and treatment records.

Finally, Mr. Veal challenges the assignment of "significant weight" to the findings by Dr. Dale that Mr. Veal had a mild limitation in his activities of daily living, and a moderate limitation in concentration, persistence, and pace. (Tr. 28, 469). The ALJ also assigned "little weight" to Dr. Dale's assessed mild limitation in Mr. Veal's social functioning and his finding that Mr. Veal had experienced one or two episodes of decompensation. (Tr. 28, 469). The Commissioner must consider, and is entitled to rely on, opinions from non-examining doctors. *See* SSR 96-6p, 1996 WL 374180, at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). As noted above, the ALJ provided an extensive summary of the medical records, (Tr. 24-26), in which she cited to adequate evidence to support her assessment of Mr. Veal's mental capabilities. Moreover, while Mr. Veal argues that Dr. Dale's opinion is less valid because it was prepared in 2007, Pl. Mot. 8, it is the pre-August 2009 time frame that is most relevant, not the time of the most recent hearing. Hence, I find no error in the ALJ's assignment of greater weight to a portion of Dr. Dale's assessment.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 15) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 19) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge